1

2                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
3

4   Eyvette Talley,                          Case No. 2:23-cv-02140-CDS-EJY

5                    Plaintiff              **Screening Order**

6   v.

7   Dresson, et al.,

8                    Defendants

9

10          Plaintiff Eyvette Talley, who was incarcerated in the custody of the Nevada Department

11   of Corrections ("NDOC") at the time the allegations in her complaint occurred, has submitted a

12   civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma*

13   *pauperis*. ECF Nos. 2-1, 6.[1] The matter of the filing fee will be temporarily deferred. I now screen

14   plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

15   **I.       Screening standard**

16          Federal courts must conduct a preliminary screening in any case in which a prisoner

17   seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28

18   U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any

19   claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek

20   monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. 1915A(b)(1), (2).

21   *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

22   699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

23   elements: (1) the violation of a right secured by the Constitution or laws of the United States, and

24   (2) that the alleged violation was committed by a person acting under color of state law. *See West v.*

25   *Atkins*, 487 U.S. 42, 48 (1988).

26

27

28
     ─────────────────────
     [1]Talley has been transferred to Wyoming Women's Center, a correctional facility, to serve the remainder of
     her sentence.

1         In addition to the screening requirements under § 1915A, pursuant to the Prison

2 Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of

3 poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief

4 may be granted, or seeks monetary relief against a defendant who is immune from such relief."

5 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can

6 be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the

7 same standard under § 1915 when reviewing the adequacy of a complaint or an amended

8 complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave

9 to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face

10 of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70

11 F.3d 1103, 1106 (9th Cir. 1995).

12         Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab.*

13 *Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper

14 only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would

15 entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this

16 determination, the court takes as true all allegations of material fact stated in the complaint, and

17 the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74

18 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent

19 standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While

20 the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must

21 provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)*.

22 A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

23         Additionally, a reviewing court should "begin by identifying pleadings [allegations] that,

24 because they are no more than mere conclusions, are not entitled to the assumption of truth."

25 *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a

26 complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded

27 factual allegations, a court should assume their veracity and then determine whether they

28 plausibly give rise to an entitlement to relief." *Id*. "Determining whether a complaint states a

1  plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw

2  on its judicial experience and common sense." *Id.*

3      Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte*

4  if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based

5  on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit

6  or claims of infringement of a legal interest which clearly does not exist), as well as claims based

7  on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490

8  U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

9  **II.        Screening of complaint**

10     In her complaint, Talley sues multiple defendants for events that took place while she

11  was incarcerated at Florence McClure Women's Correctional Center ("FMWCC"). ECF No. 2-1

12  at 1. Talley sues defendants Dresson, Nash, Najera, Peterson, Lt. Sanchez, Lt. Wells,

13  Hubbartpickett, senior correctional officer Gates, and senior correctional officer Sanchez, and she

14  brings six claims and seeks monetary and injunctive relief. *Id.* at 2–16.

15     Talley alleges the following facts. On August 18, 2022, while Talley was on crutches due

16  to broken toes, she was handcuffed with her hands in front of her. *Id.* at 5. In this situation, Gates,

17  who was much larger than Talley, knowingly and intentionally touched her breast. *Id.* Talley

18  informed Gates that he was touching her breast, but he did not remove it. *Id.*

19     When Talley reported Gates's conduct to Lt. Sanchez, Sanchez did not believe Talley

20  and made statements that made Talley feel like she had been in the wrong. *Id.* at 6. At some point,

21  Talley was retaliated against for complaining about Gates's touching of her breast. *Id.* at 7. Talley's

22  legal mail was opened not in her presence. *Id.* Talley was threatened by staff. *Id.* Talley was harmed

23  by a razor blade that was placed in her shoe by another inmate, ostensibly at the direction of

24  prison staff. *Id.*

25     On October 18, 2023, Talley witnessed Lt. Sanchez and inmate Moya in a heated, face-to-

26  face argument regarding their sexual relationship. *Id.* at 6. Talley verbally reported what she

27  witnessed. *Id.* She also filed kites and grievances reporting the argument. *Id.* The next day, Lt.

28  Sanchez was fired. *Id.*

On December 1, 2023, Talley was transferred to Wyoming Women's Center in retaliation for her complaints about Gates and the retaliation she suffered. *Id.* at 7.

Based on these allegations, Talley alleges an Eighth Amendment cruel and unusual punishment claim against Gates for sexual assault, a claim for violations of the Prison Rape Elimination Act of 2003 ("PREA") against all defendants, First Amendment retaliation claims against all defendants, intentional infliction of emotional distress against all defendants, conspiracy to violate constitutional rights against all defendants, and a First Amendment violation for opening Talley's legal mail against all defendants. I will consider the claims in turn.

### A.   Eighth Amendment Cruel and Unusual Punishment

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012). Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood*, 692 F.3d at 1046 (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). In evaluating a prisoner's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* (quoting *Hudson*, 503 U.S. at 8).

Where there is no legitimate penological purpose for a prison official's conduct, courts presume malicious and sadistic intent. *Id.* at 1050. Sexual contact between a prisoner and a prison guard serves no legitimate role and "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In sexual contact cases, there is no lasting physical injury requirement because the only requirement is that the officer's actions be offensive to human dignity. *Schwenk*, 204 F.3d at 1196.

A "prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff

1   member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the

2   prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

3        I find that Talley states a colorable Eighth Amendment cruel and unusual punishment

4   claim based on sexual assault or abuse. Talley alleges that defendant Gates knowingly and

5   intentionally put his hand on her breast and refused to remove his hand. Construing the

6   allegations liberally, as the court must, there was no penological purpose in Gates's actions. Talley

7   felt humiliated and that Gates's conduct violated her dignity. Therefore, the claim for Eighth

8   Amendment cruel and unusual punishment will proceed against defendant Gates.

9        **B.   Claim 1—Failure to Train and Take Corrective Action**

10        A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

11   participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is

12   only liable for constitutional violations of his subordinates if the supervisor participated in or

13   directed the violations, or knew of the violations and failed to act to prevent them. There is no

14   respondeat superior liability under [§]1983." *Id.*; *see also Iqbal*, 556 U.S. at 676 (holding that

15   "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that

16   each Government-official defendant, through the official's own individual actions, has violated the

17   Constitution").

18        To state a claim for supervisory liability for failure to train, "the plaintiff must show that

19   the official was 'deliberately indifferent to the need to train subordinates, and the lack of training

20   actually caused the constitutional harm or deprivation of rights.'" *Hyde v. City of Willcox*, 23 F.4th

21   863, 874 (9th Cir. 2022) (quoting *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014)). To

22   satisfy this standard, the plaintiff must "allege facts to show that the official 'disregarded the

23   known or obvious consequence' that a particular omission in their training program would cause

24   [prison] employees to violate [prisoners'] constitutional rights.'" *See id.* (internal brackets and

25   ellipses omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

26        I find that Talley has failed to state a colorable claim for failure to train or correct

27   subordinates. Talley only generally asserts that "all defendants . . . failed to follow the department

28   policies + procedures regarding retaliation, PREA, invest. + protection provided by the Nevada

1  state laws + U.S. constitutions." ECF No. 2-1 at 9. Here, Talley has failed to identify any specific

2  defendant and the specific actions that the defendant took. Therefore, I dismiss this claim with

3  leave to amend. If Talley chooses to amend this claim, she must identify specific defendants and

4  specific facts showing what the defendant did to violate Talley's rights. In this context, Talley

5  must identify what training a specific official omitted and how that caused prison employees to

6  violate Talley's constitutional rights.

7            **C.   Claim 2—PREA Violations**

8            As an initial matter, Talley cannot state a cognizable § 1983 claim based on PREA, 34

9  U.S.C. § 30301 (formerly 42 U.S.C. § 15601), because PREA does not create a private right of

10 action. *See Hatcher v. Harrington*, 2015 WL 474313, at *4 (D. Haw. Feb. 5, 2015) (noting that district

11 courts nationwide have found that PREA does not create a private cause of action). PREA was

12 enacted to study the problem of prison rape and to authorize the reporting of incidents of rape

13 but nothing in the Act creates a private right of action enforceable under § 1983. *See Law v. Whitson*,

14 2009 WL 5029564, *4 (E.D. Cal. Dec. 15, 2009); *Trost v. Cox*, 3:14-cv-00611-MMD-WGC, ECF No.

15 3, *9 (D. Nev. April 10, 2015). As such, I dismiss Claim 2 for PREA violations with prejudice as

16 amendment would be futile.

17           **D.   Claim 3—First Amendment Retaliation**

18           Prisoners have a First Amendment right to file prison grievances and to pursue civil

19 rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Without those

20 bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy

21 prison injustices. And because purely retaliatory actions taken against a prisoner for having

22 exercised those rights necessarily undermine those protections, such actions violate the

23 Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

24           To state a viable First Amendment retaliation claim in the prison context, a plaintiff

25 must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2)

26 because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

27 exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

28 correctional goal." *Id.* at 567–68. Total chilling is not required; it is enough if an official's acts

1   would chill or silence a person of ordinary firmness from future First Amendment activities. *Id.* at

2   568–69. A plaintiff who fails to allege a chilling effect may still state a claim if she alleges that she

3   suffered some other harm that is more than minimal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir.

4   2012).

5          I find that Talley fails to state a colorable First Amendment retaliation claim. While

6   Talley has identified specific adverse actions that were taken against her (transferring her to

7   Wyoming, opening her legal mail, and threatening her), she has not identified which defendants

8   took which actions. If she chooses to file an amended complaint to cure this deficiency, Talley

9   must identify which defendants took which actions and what protected conduct by Talley

10  motivated the retaliatory actions. As such, Talley's claim for First Amendment retaliation is

11  dismissed with leave to amend.

12          **E.   Claim 4—Intentional Infliction of Emotional Distress**

13          Plaintiff brings a state law tort claim for intentional infliction of emotional distress

14  ("IIED"). Under Nevada law, the State of Nevada has generally waived sovereign immunity for

15  state tort actions in state court. Nev. Rev. Stat. § 41.031(1). To sue the State of Nevada or a state

16  employee, the plaintiff is required to name the State of Nevada or appropriate political

17  subdivision. Nev. Rev. Stat. §§ 41.031, 41.0337. "In any action against the State of Nevada, the

18  action must be brought in the name of the State of Nevada on relation of the particular

19  department, commission, board or other agency of the State whose actions are the basis for the

20  suit." *Id.* § 41.031(2).

21          With respect to <u>federal</u> court cases, the State of Nevada does not waive its immunity

22  from suit conferred by the Eleventh Amendment. Nev. Rev. Stat. § 41.031(3). Generally, the State

23  of Nevada and arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686

24  F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity

25  to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983

26  does not constitute an abrogation of the eleventh amendment immunity of the states"). In *Stanley*

27  *v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir. 2006), the Ninth Circuit held that

28

1  28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims. *Id.*

2  at 1133–34.

3       For this reason, I find that Plaintiff must raise her IIED state law claim in state court and

4  dismiss that claim in this action accordingly. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982)

5  (holding that, where Montana law deemed governmental entities indispensable parties in a state

6  tort claim against a county employee, the federal court had no supplemental jurisdiction over the

7  state tort claim if it had no jurisdiction over the indispensable party).

8       **F.  Claim 5—Conspiracy to Violate Constitutional Rights**

9       "To state a claim for a conspiracy to violate one's constitutional rights under section

10  1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."

11  *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must show "an agreement or

12  meeting of the minds to violate constitutional rights," and "[t]o be liable, each participant in the

13  conspiracy need not know the exact details of the plan, but each participant must at least share

14  the common objective of the conspiracy." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir.

15  2010).

16       "Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cnty.*, 693

17  F.3d 896, 935 (9th Cir. 2012). Conspiracy may "enlarge the pool of responsible defendants by

18  demonstrating their causal connections to the violation . . . ." *Id.* But "[i]t does not enlarge the

19  nature of the claims asserted by the plaintiff," so "there must always be an underlying

20  constitutional violation." *Id.* And the failure to state a colorable underlying constitutional

21  violation is fatal to a conspiracy claim based on the same allegations. *Avalos v. Baca*, 596 F.3d 583,

22  592 (9th Cir. 2010) (citing *Cassettari v. County of Nevada*, 824 F.2d 735, 739 (9th Cir. 1987), *Landrigan*

23  *v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980)).

24       I find that Talley fails to state a colorable conspiracy to violate civil rights claim. Talley

25  only provides conclusory allegations that all defendants ignored the grievances and kites that she

26  filed. While transferring Talley to a prison out of state may be the adverse action underlying a

27  First Amendment retaliation claim, Talley has failed to identify the specific defendants that acted

28  as part of the alleged conspiracy to have her transferred. Talley has not alleged any specific facts

1  showing an agreement or meeting of the minds to violate her rights. As such, I dismiss this claim

2  without prejudice and with leave to amend.

### G.  Claim 6—First Amendment Legal Mail Violations

4  Prisoners have "a protected First Amendment interest in having properly marked legal

5  mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

6  With respect to legal mail, prison officials are not permitted to review a prisoner's legal papers for

7  legal sufficiency before sending them to the court. *See Ex parte Hull*, 312 U.S. 546, 549

8  (1941). However, prison officials may, consistent with the First Amendment, require (1) that mail

9  from attorneys be identified as such and (2) open such correspondence in the presence of the

10 prisoner for visual inspection. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974). Additionally, "[m]ail

11 from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83

12 F.3d 1083, 1094 (9th Cir. 1996) *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). A

13 prison need not treat all mail sent to government agencies and officials as legal mail. *See O'Keefe v.*

14 *Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996).

15 I find that Talley has failed to state a First Amendment legal mail claim. Talley asserted

16 that her legal mail was opened not in her presence. However, Talley has again asserted that "all

17 defendants" violated her rights by opening her legal mail. ECF No. 2-1 at 14. Talley is required to

18 identify specific defendants by name and the actions that the defendant took to violate her rights.

19 As such, I dismiss Talley's claim for First Amendment mail violations without prejudice with

20 leave to amend.

### H.  State of Nevada

22 Talley has named "NDOC (at FMWCC)" as a defendant. I dismiss defendant NDOC,

23 with prejudice, from this case as amendment would be futile. *See Taylor*, 880 F.2d at 1045 (holding

24 that the NDOC, a state agency, is immune from suit under the Eleventh Amendment); *see also*

25 *Stanley*, 433 F.3d at 1133–34 (holding that 28 U.S.C. § 1367, the supplemental jurisdiction statute,

26 "does not abrogate state sovereign immunity for supplemental state law claims").

27

28

### I. Fourth, Fifth, Ninth, and Fourteenth Amendment Claims

Talley listed the Fourth, Fifth, Ninth, and Fourteenth Amendments as rights that were violated in every claim. However, Talley did not state any facts that the Court could liberally construe as violations of these amendments. As such, I dismiss any claims under the Fourth, Fifth, Ninth, and Fourteenth Amendment without prejudice.

### J. Leave to Amend

Although I grant Talley leave to amend, I do not grant Talley leave to amend in any way that she sees fit. Talley has leave to amend to allege additional true facts to show: (1) specific defendants' failure to train or supervise employees; (2) First Amendment retaliation; (3) conspiracy to violate constitutional rights; (4) First Amendment legal mail violations; and (5) facts that set forth alleged violations of the Fourth, Fifth, Ninth, and Fourteenth Amendments. I do not give Talley leave to assert new claims.

If Talley chooses to file an amended complaint, she is advised that an amended complaint replaces the complaint, so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey*, 693 F.3d at 928 (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). This means that the amended complaint must contain all facts and claims and identify all defendants that she intends to sue, including the claim(s) found cognizable in this order. She must file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Talley must follow the instructions on the form. She need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, she should allege facts sufficient to show what each specific defendant did to violate her civil rights. She must file the amended complaint by December 5, 2024. If Talley chooses not to file an amended complaint curing the stated deficiencies, this action will proceed on her claim against defendant Gates for Eighth Amendment cruel and unusual punishment only.

III.      Conclusion

I therefore order that a decision on the application to proceed *in forma pauperis* (ECF No. 6) is deferred.

I order that the Clerk of the Court is directed to file the complaint (ECF No. 2-1).

I order that defendants Dresson, Nash, Najera, Peterson, Lt. Sanchez, Lt. Wells, HubbartPickett, and correctional officer Sanchez are dismissed without prejudice from the complaint.

I order that defendant NDOC (at FMWCC) is dismissed from the complaint with prejudice as amendment would be futile.

I order that the Eighth Amendment cruel and unusual punishment claim based on sexual assault or abuse will proceed against defendant Gates.

I order that the claim for supervisory liability based upon a failure to train and supervise (Claim 1) is dismissed without prejudice and with leave to amend.

I order that the claim for PREA violations (Claim 2) is dismissed with prejudice because amendment would be futile.

I order that the claim for First Amendment retaliation (Claim 3) is dismissed without prejudice and with leave to amend.

I order that the claim for intentional infliction of emotional distress (Claim 4) is dismissed without prejudice to refiling in state court and without leave to amend.

I order that the claim for conspiracy to violate civil rights (Claim 5) is dismissed without prejudice and with leave to amend.

I order that the claim for First Amendment legal mail violations (Claim 6) is dismissed without prejudice and with leave to amend.

I order that any claim based on the Fourth, Fifth, Ninth, or Fourteenth Amendments are dismissed without prejudice and with leave to amend.

I order that, if Talley chooses to file an amended complaint curing the deficiencies of her complaint, as outlined in this order, Talley must file the amended complaint by December 5, 2024.

I order that the Clerk of the Court will send to Talley the approved form for filing a § 1983 complaint, instructions for the same, and a copy of her original complaint (ECF No. 2-1). If Talley chooses to file an amended complaint, she should use the approved form and mark "First Amended Complaint" in the caption.

I order that, if Talley chooses to file an amended complaint, the Court will screen the amended complaint in a separate screening order. The screening process will take several months.

I order that, if Talley chooses not to file an amended complaint curing the stated deficiencies of the complaint, this action will proceed immediately on the Eighth Amendment cruel and unusual punishment claim based on sexual assault or abuse against defendant Gates only.

Dated: November 4, 2024

_____
United States District Judge