UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Eyvette Talley,<br><br>                    Plaintiff<br><br>v.<br><br>Gordon Gates,<br><br>                    Defendant | Case No. 2:23-cv-02140-CDS-EJY<br><br>**Order Granting Defendant's Motion for Summary Judgment and Denying as Moot Defendant's Motion to Dismiss**<br><br>[ECF Nos. 22, 23] |

Pro se plaintiff Eyvette Talley brings this 42 U.S.C. § 1983 civil rights action against Gordon Gates for an alleged Eighth Amendment violation. *See* Compl., ECF No. 10. On July 11, 2025, defendant Gates filed two motions: a motion to dismiss, and a motion for summary judgment. *See* Mot. to dismiss, ECF No. 22; Mot. for summ. j., ECF No. 23. These motions are briefed. *See* Resp., ECF No. 26;[1] Reply, ECF No. 29. Because I find that Talley failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act (PLRA), Gates's motion for summary judgment is granted.[2]

I.    **Background**

        A.   **Talley's allegations**[3]

Talley alleges that on August 18, 2022, while she was on a crutch due to her broken toes, Gates handcuffed her with her hands in front of her. ECF No. 10 at 5, ¶ C. Gates is six-feet tall and over 200 pounds. *Id.* Talley alleges that he knowingly and intentionally touched her breast. *Id.* She informed him that he was touching her breast, but he did not remove his hands from that area. *Id.* Talley reported the incident ("the incident"). *Id.* at 7.

---

[1] Talley's response addresses both of Gates's motions.
[2] Gates moves to dismiss based on the same grounds as the summary judgment motion. Because I grant summary judgment, his motion to dismiss is denied as moot.
[3] Unless otherwise noted, citations to the complaint are to provide context to this action and do not serve as a finding of fact.

**B. Prison Rape Elimination Act (PREA) investigation and grievance history**

Talley was housed at the Florence McClure Women's Correctional Center (FMWCC) from May 14, 2010, until December 1, 2023, when she was returned to the Wyoming Department of Corrections. *See* Historical bed assignment report, Def.'s Ex. A, ECF No. 23-1 at 2–4.

On August 19, 2022, Deborah Striplin (OIG PREA Coordinator) referred the incident to the Office of Inspector General for an investigation. *See* Investigation detail report, ECF No. 23-4 at 1–3. The next day, investigator Cody Castiglioni was assigned the investigation into Talley's report of a "male staff member touch[ing] her breasts." *Id.* On August 22, 2022, Talley left a message related to the investigation report on the PREA hotline. *Id.* at 1.

On August 22, 2022, Talley filed a grievance (2006-31-41877). *See* Grievance history, Def.'s Ex. B, ECF No. 23-2; Grievance history, Def.'s Ex. C, ECF No. 23-3 at 40.[4] In her grievance, she alleges that on August 18, 2022, when she finished showering, Gates opened the flap and handcuffed her from the front to escort her because she had a crutch. Def.'s Ex. B, ECF No. 23-2 at 4. When escorting her, Gates grabbed the upper part of her arms, and his hand was touching her breast. *Id.* at 3. While Gates escorted her, she stopped and informed Gates that he was touching her breast, but he did not move his hand, so she attempted to extend her arms to stop him from touching her breast. *Id.* at 4–5; ECF No. 26 at 9.[5]

On September 8, 2022, an official response to the grievance was issued stating the grievance "has been forwarded to the I.G.s office, investigation has been assigned. 740.08.11.A Grievances alleging staff misconduct pursuant to Administrative Regulation 339 Cod of Ethics Employee Conduct, will be reviewed by the Warden, and if deemed appropriate, will be

---

[4] Grievance 2006-31-41877 was the only grievance filed related to Talley's Eighth Amendment claim based on sexual assault or abuse. Talley provides a copy of additional grievances filed that are not directly related to her underlying claim (2006-31-42644; 2006-31-59151; 2006-31-50907; 2006-31-61603; 2006-31-60169; 2006-55140). *See generally* ECF No. 26 at 14–16, 23, 25–26. Rather, those grievances are related to claims that the court previously dismissed (ECF No. 9 at 11), so I do not reference or address those grievances herein.

[5] Talley attached a kite dated August 25, 2022, to her complaint related to the incident at issue. *See* ECF No. 10 at 35. The response to the grievance was dated August 31, 2022, and stated that the "report ha[d] been forwarded to investigator general's office." *See* Def.'s Ex. C, ECF No. 29-3 at 144.

forwarded to the Inspector Generals (I.G.) through NOTIS." ECF No. 10 at 20; Def.'s Ex. C, ECF No. 23-3 at 40; ECF No. 26 at 13.[6]

On March 2, 2023, Talley received information regarding her informal grievance. *See* ECF No. 23-2 at 3; ECF No. 26 at 10, 13 (Talley signed the informal grievance form indicating she disagreed with the decision and signed the official response on this date). On March 6, 2023, Talley received a copy and notification of the offender victim PREA report notification form, indicating that the investigation of her incident (IR-2022-SNWCC-001417) was closed because there was no substantiated finding of any sexual harassment or sexual abuse. *See* DOC 2095 PREA Report, Notification Form, Def.'s Ex. E, ECF No. 23-5 at 2.[7]

### C. Talley's initiated action

Talley initiated this action on December 27, 2023. *See* ECF No. 2. In her complaint, Talley sued multiple defendants for events that took place while she was incarcerated at FMWCC. ECF No. 10 at 1. After screening Talley's complaint, her Eighth Amendment cruel and unusual punishment claim based on sexual assault or abuse against Gates was permitted to proceed. *See* Order, ECF No. 9 at 11.[8] Gates then filed this pending summary judgment motion. ECF No. 23.

## II.    Legal standard

### A. Summary judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is

---

[6] Talley attached unsubmitted kites dated June 17, 2023, and October 16, 2023, to her complaint and opposition—the documents do not contain the receiving staff signature, nor does it contain the responding staff signature. *See* ECF No. 10 at 33–34; ECF No. 26 at 7, 8.

[7] The record is devoid of any appeal of this grievance. *See* Def.'s Ex. C; ECF No. 23-3 at 40; Nash decl., Def.'s Ex. G, ECF No. 23-7 at 5, ¶ 15.

[8] The court dismissed Talley's PREA violations, First Amendment retaliation, intentional infliction of emotional distress, and other related claims *See* ECF No. 9 at 11. No amended complaint was filed thereafter.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiffs bear the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiffs' case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B.  Administrative exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing a civil-rights action to redress alleged constitutional violations by prison staff. 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Of course, "[a]n inmate need exhaust only such administrative remedies as are 'available,'" which requires that the procedures "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016).

In *Ross v. Blake*, the Supreme Court provided a non-exhaustive list of "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain

relief." *Id.* at 643. An administrative remedy may be considered unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or when "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must "prove that there was an available administrative remedy" that the prisoner did not exhaust; the burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007) (cleaned up). But "the ultimate burden of proof remains with the defendant." *Id.* The trial court should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.*

**III.    Discussion**

Gates argues that summary judgment should be granted because Talley failed to exhaust her administrative remedies. ECF No. 23 at 10. Because I agree that Talley failed to exhaust her administrative remedies, in violation of the PLRA, Gates's motion is granted.

To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in AR 740,[9] and they must complete three levels of grievance: informal, first, and second. *See* AR 740.08–740.10.[10] Generally, a grievance at any level may be either granted, denied, partially granted, abandoned, duplicate, not accepted or grievable, resolved, settled, withdrawn, or referred to the Office of the Inspector General. Def.'s Ex. F, ECF No. 23-6 at 3; AR 740.01(5); *Scott v. Michell*, 2025 U.S. Dist. LEXIS 143903, at *11 (D. Nev. July 2, 2025). However, **all**

[9] An NDOC Administrative Regulation is publicly available, and I may take judicial notice of it. *See Brown v. Valoff*, 422 F.3d 926, 931 n.7, n.9 (9th Cir. 2005) (taking judicial notice of prison's Department Operations manual and California Department of Correction Administrative Bulletin); *see also* Fed. R. Evid. 201(b)(2).

[10] *See also* AR 740, Def.'s Ex. F, ECF No. 23-6.

**PREA grievances are immediately referred to the IG** and grievance findings or responses will not be titled substantiated. Def.'s Ex. F, ECF No. 23-6 at 3; AR 740.03(2)(A).

If the grievance's response is overdue, the "offender may proceed to the next level," and an "overdue response does not count against the offender's timeframe for an appeal if" she waits for the response before initiating the appeal. AR 240.03(9)(B). If the prison denies the informal grievance, the inmate has five days after the receipt of the denial to proceed to the next grievance level. AR 740.08(12)(A). The inmate can then file a first-level grievance, which the prison has 45 days to respond to. AR 740.09(5). If the inmate receives another denial, she has five days to file an appeal to proceed to her second-level grievance. AR 740.09(5)(A).

Further, when a grievance involves sexual abuse, once it is referred to the IG for investigation, **the IG shall make a final decision on the merits** of any portion of the sexual abuse grievance within 90-calendar days of the initial filing of the grievance. *See* Def.'s Ex. F, ECF No. 23-6 at 14; AR 740.09(2)(B) (emphasis added). The IG may extend time required to respond for an additional 70 calendar days. AR 740.09(2)(C). Thereafter, the IG shall notify the offender in writing of any extension. AR 740.09(2)(D). Upon completion of the investigation into sexual abuse, the individual filing the grievance shall be informed of the outcome of the IG's investigation. 740.09(2)(E). "The offender may **appeal the decision related to a sexual abuse grievance response from the IG within 5-calendar days** of the grievance." AR 740.10(1)(G) (emphasis added).

Here, Gates argues that Talley failed to appeal and seek available remedies at the second level following her receipt of the DOC 2095 notifying her that the OIG was unable to substantiate her claims. ECF No. 23 at 9. Gates further argues that Talley was required to pursue available remedies at the second procedural level and could have elected to do so once the OIG's response became overdue, but no sooner than November 20, 2022. *Id.*

In opposition, Talley does not address nor dispute that she failed to appeal, rather her arguments focus on alleged factual disputes. *See* ECF No. 26 at 2. Talley asserts that she kited

regarding the delay in the decision being rendered in the grievance, 2006-31-41877. *Id.* The record indicates that these kites were not submitted. *See* Excerpt of I-File, Def.'s Ex. C, ECF No. 29-3; ECF No. 10 at 33–34; ECF No. 26 at 7–8 (no staff signatures). Even if they were submitted, the AR provides when there is a delay in a decision being rendered on a grievance, the grieving individual may appeal to the next level. AR 240.03(9)(B). It does not indicate that an individual should kite for delays.

The Ninth Circuit has held that the defendant bears the burden of proving that an administrative remedy was available to the prisoner and that she failed to exhaust those remedies. *Welch v. Liggett*, 2023 U.S. Dist. 4882, at *11–12 (D. Nev. Jan. 11, 2023). Once the defendant carries that burden, the prisoner has the burden of production, to present evidence showing that the administrative remedies were effectively unavailable. *Id.*

Upon review of the record, there was indeed a delay in the decision rendered in Talley's investigation (IR-2022-SNWCC-001417). However, this alone does not make Talley's appeal process "unavailable." *See Rodriguez v. Cain*, 2022 U.S. Dist. LEXIS 89323, at *16 (D. Or. May 17, 2022). Talley argues that she did not receive notice of an extension. *See* ECF No. 26 at 2. While she does not provide evidence nor points and authorities, I interpret her argument to be in reference to AR 740.09(2)(C) and AR 740.09(2)(D) that provides if the IG requires an extension, notice shall be provided. Even if the IG did not provide notice of an extension, Talley does not argue that she was unable to appeal once she learned her grievance was not substantiated by the IG.

While Talley is not required to file an appeal when a response is overdue, she had the ability and the discretion to do so. *See* AR 240.03(9)(B). However, this is not dispositive in my decision finding that Talley did not properly exhaust her administrative remedies. What is, however, is her failure to file an appeal after she received notice of the PREA report indicating

the investigation of her incident (IR-2022-SNWCC-001417) was closed on March 6, 2023.[11] She had five calendar days to file a timely appeal. *See* AR 740.10(1)(G), but the record demonstrates that Talley did not appeal to the first or second level of that grievance (2006-31-41877). And Talley does not argue that the appeal process was unavailable to her. Consequently, the defendant is entitled to summary judgment based on the failure to exhaust PLRA administrative remedies.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the defendant's motion for summary judgment **[ECF No. 23] is GRANTED**, and defendant's motion to dismiss **[ECF No. 22] is DENIED as moot.**

The Clerk of Court is kindly directed to enter judgment in favor of the defendant and close this case.

Dated: February 3, 2026

_____
Cristina D. Silva
United States District Judge

---

[11] Talley disputes that she signed the 2095 Form providing her notice that her claim was unsubstantiated. However, she did not provide the court with any evidence to support this assertion. Respondent however provided evidence that she, in fact, did receive notice of this form. *See* Def.'s Ex. D, ECF No. 23-4 at 1; Def.'s Ex. E, ECF No. 23-5 at 2.

8